KAMALA D. HARRIS
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General
JAMES R. POTTER, State Bar No. 166992
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-2637
Fax: (213) 897-2802
E-mail: James.Potter@doj.ca.gov
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the CALIFORNIA TOXIC SUBSTANCES CONTROL ACCOUNT, | Case No.  CV-05-7746 DDP |
| Plaintiffs, | |
| v. | CONSENT DECREE  WITH JPMORGAN CHASE, N.A., FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON MUTUAL BANK AND RELATED ENTITIES |
| AMERICAN HONDA MOTOR CO., INC.; ANADARKO E&P COMPANY LP; ATLANTIC RICHFIELD COMPANY; BAYER CROPSCIENCE INC.; CHEMICAL WASTE MANAGEMENT, INC.; CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY; CITY OF LOS ANGELES, acting by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER; CONOCOPHILLIPS COMPANY; DUCOMMUN AEROSTRUCTURES, INC.; EXXON MOBIL CORPORATION; FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Mutual Bank, HONEYWELL INTERNATIONAL, INC.; HUNTINGTON BEACH COMPANY; JPMORGAN CHASE BANK, N.A.; MCFARLAND ENERGY, INC.; NATIONAL STEEL AND SHIPBUILDING COMPANY; NORTHROP GRUMMAN CORPORATION; | |

June 8, 2016

QUEMETCO, INC.; ROHR, INC.; SHELL                    )
OIL COMPANY; SOUTHERN                                 )
CALIFORNIA EDISON COMPANY;                            )
THUMS LONG BEACH COMPANY;                             )
UNION CARBIDE CORPORATION;                            )
UNION OIL COMPANY OF                                  )
CALIFORNIA; WASTE MANAGEMENT                          )
COLLECTION AND RECYCLING, INC.;                       )
WESTERN WASTE INDUSTRIES; WMI                         )
LIQUIDATING TRUST, A SUCCESSOR                        )
IN INTEREST TO WASHINGTON                             )
MUTUAL INC.; WMI RAINIER, LLC; and                    )
XEROX CORPORATION.                                    )
                                                      )
            Defendants.                               )
                                                      )
                                                      )
                                                      )
_____                 )

Table of Contents

I.      INTRODUCTION ........................................................................................1

II.     DEFINITIONS .............................................................................................1

III.    BACKGROUND ..........................................................................................7

IV.     CONSENT DECREE ................................................................................ 15

V.      JURISDICTION ........................................................................................ 16

VI.     MATTERS ADDRESSED ........................................................................ 17

VII.    PAYMENTS .............................................................................................. 17

VIII.   COVENANTS NOT TO SUE BY AGREEING AGENCIES AND
        RESERVATIONS OF RIGHTS ............................................................... 19

IX.     COVENANTS NOT TO SUE BY HOME SAVINGS PARTIES
        AND RESERVATIONS OF RIGHTS ...................................................... 23

X.      EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION ............ 24

XI.     OTHER PROVISIONS ............................................................................. 26

XII.    RETENTION OF RECORDS ................................................................... 30

XIII.   NEGOTIATED ASSUMPTION OF RESPONSIBILITY BY
        UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
        ("U.S. EPA") ............................................................................................. 31

XIV.    PUBLIC COMMENT ............................................................................... 32

XV.     MEET AND CONFER .............................................................................. 32

XVI.    DISPUTE RESOLUTION ........................................................................ 33

XVII.   SIGNATORIES ......................................................................................... 33

I.      INTRODUCTION

This Consent Decree is made and entered into by and among the California Department of Toxic Substances Control ("DTSC") and the Home Savings Parties, who are the settling defendants herein (collectively, the "Parties," and each a "Party").  (Capitalized terms are defined in Section II and used accordingly.)  This Consent Decree, among other things, obligates JPMorgan Chase Bank, N.A., ("JPMC") to pay $86 million as Response Costs and Natural Resource Damages for the BKK Facility, in West Covina, California; resolves the liability of the Home Savings Parties for injunctive relief, Response Costs, and any other damages incurred or to be incurred by DTSC or any other Agreeing Agency at the BKK Facility; and gives the Home Savings Parties contribution protection and other benefits as specified herein and as provided by law for the BKK Facility.   The liabilities resolved by this Consent Decree were asserted in the claims made in the First Complaint and in the DTSC proofs of claim filed in the *Washington Mutual Inc. Bankruptcy* and in the Washington Mutual Bank Receivership.

II.     DEFINITIONS

2.1      Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, or in regulations promulgated under CERCLA, shall have the meaning assigned to them therein.  Whenever terms listed below are used and capitalized in this Consent Decree or in any attachments or exhibits hereto, the following definitions shall apply:

2.2      "Agreeing Agencies" shall mean the following agencies and departments of the State of California: DTSC, the California Environmental Protection Agency, the State Water Resources Control Board, California Regional Water Quality Control Board, Los Angeles Region ("RWQCB"), the California Department of Resources Recycling and Recovery ("CalRecycle"), the California

Department of Fish and Wildlife, the California Air Resources Board, and the California Toxic Substances Control Account, including its predecessor accounts specified in Health and Safety Code section 25324, to the extent that funds from those accounts have been, or will be expended on behalf of the State of California at the BKK Facility.

2.3     "Amended First Consent Decree" shall mean the consent decree entered in this action between DTSC and certain settling defendants, entered by the Court on March 6, 2006.

2.4     "Disbursement Amendment to the Third Consent Decree" shall mean the "Disbursement Amendment to the Third Partial Consent Decree" that DTSC will lodge in *California Department of Toxic Substances Control, et. al. v. American Honda Motor Co., Inc., et. al.*, No. No. 2:15-cv-00729-R-AJW (C.D. Cal. February 2, 2015).

2.5     "Bankruptcy Settlement" shall mean the agreement in the *Washington Mutual Inc. Bankruptcy*, between WMI and WMI Investment Corp., JPMC, DTSC and the BKK Joint Defense Group and concerning the BKK Facility, and approved by the Court on April 13, 2011, a copy of which is attached as Exhibit A.

2.6     "BKK Facility" shall mean, for purposes of this Consent Decree only, the 583-acre landfill facility located at 2210 South Azusa Avenue, West Covina, California, and, in accordance with CERCLA, section 101(9), 42 U.S.C. § 9601(9), all associated areas where BKK Corporation ("BKK Corp.") deposited wastes and any areas where any hazardous substances or solid or hazardous wastes emanating from or delivered to the BKK Facility have been deposited, stored, disposed of, or placed, or otherwise came to be located or come to be located in the future.  For the avoidance of doubt, for the purpose of this Consent Decree, the BKK Facility contains the Class I Landfill, the Class III Landfill, related facilities, the areas

2

1  referred to as "Area B" and "Area D," the Subject Property, "Parcel 1," "Parcel 2,"

2  "Parcel 5," and the area known as "Trash Island."

3        2.7    "BKK Sanitary Landfill Site Special Account" shall mean the special

4  account, within the U.S. EPA Hazardous Substance Superfund, established for the

5  Site by U.S. EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §

6  9622(b)(3).

7        2.8    "BKK Working Group," also known as the BKK Joint Defense Group,

8  shall mean that unincorporated association of corporations and other entities, of

9  changing membership, whose members have constituted the settling defendants in

10  the Amended First, Second, and Third Consent Decrees.

11        2.9    "Class I Landfill" shall mean the closed hazardous waste landfill

12  located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California

13  91792.

14        2.10    "Class III Landfill" shall mean the closed municipal landfill also

15  located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California

16  91792.

17        2.11    "Day" or "day" shall mean a calendar day.  In computing any period of

18  time under this Consent Decree, where the last day would fall on a Saturday, Sunday,

19  or federal or State holiday, the period shall run until the close of business of the next

20  working day.

21        2.12    The "Effective Date" shall mean the first date after (a) the Court

22  approves of this Consent Decree and (b) this Consent Decree is no longer subject to

23  appeal; except, however, if this Consent Decree becomes null and void pursuant to

24  Section XV there will be no Effective Date.

25        2.13    "FDIC-R" shall mean the Federal Deposit Insurance Corporation in its

26  capacity as receiver for Washington Mutual Bank.

27

June 8, 2016           3           Case No.  CV-05-7746 CA
Consent Decree
with JPMorgan Chase NA et. al

2.14    "FDIC-C" shall mean the Federal Deposit Insurance Corporation in its corporate capacity.

2.15    "Hazardous Substances" shall have the meaning set forth in section 101(14) of CERCLA, 42 U.S.C. § 9601(14) except, for the purpose of this Consent Decree, the term shall also include petroleum, crude oil, crude oil fractions, and solid and hazardous wastes as defined in the Solid Waste Disposal Act, 42 U.S.C. § 6903(5), (27).

2.16    "Home Savings" shall mean Home Savings & Loan Association, a California corporation, also known as Home Savings of America, Home Savings of America, a Federal Savings and Loan Association, and Home Savings of America, F.A.

2.17    "Home Savings Parties" shall mean (1) JPMC, (2) the WMI Entities, (3) FDIC-R, and (4) all of their predecessors, successors, heirs and assigns, including but not limited to Home Savings and Washington Mutual Bank.

2.18    The "2016 PRP Settlement Escrow Account" shall mean the escrow account by that name established in the Disbursement Amendment to the Third Consent Decree in the case *California Department of Toxic Substances Control, et. al. v. American Honda Motor Co., Inc., et. al.*, No. 2:15-cv-00729-R-AJW (C.D. Cal. February 2, 2015).

2.19    "JPMC" shall mean JPMorgan Chase Bank, N.A., in its individual capacity, and in its capacity as having purchased assets and assumed liabilities from WMB to the extent provided by the Purchase and Assumption Agreement, and as having agreed to pay and fund certain liabilities of the WMI Entities pursuant to the Bankruptcy Settlement.

2.20    "National Contingency Plan" or "NCP" shall refer to the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300.

1   2.21   "Natural Resource Damages" means any damage, injury to, destruction

2   of or loss of land, fish, wildlife, biota, air, water, groundwater, drinking water,

3   supplies, and other such resources, including the costs of a damage assessment,

4   belonging to, managed by, held in trust by, pertaining to, or otherwise controlled by

5   the State of California, or a local government, as specified in California Health and

6   Safety Code section 25352.

7   2.22   "Oxford Investment Corporation" shall mean the corporation named

8   Oxford Investment Corporation.

9   2.23   "Purchase and Assumption Agreement" means the purchase and

10   assumption agreement among FDIC-R, FDIC-C, and JPMC dated September 25,

11   2008.

12   2.24   "Response" and "Response Action(s)" shall have the meanings given

13   those terms by section 101(25) of CERCLA, 42 U.S.C. § 101(25) and California

14   Health and Safety Code section 25323.2, respectively, and case law interpreting

15   such, including but not limited to any actions that would: 1) abate any imminent and

16   substantial endangerment as that term is used in the Resource Conservation Recovery

17   Act ("RCRA"), 42 U.S.C. §§ 6901 et seq.;  2) constitute "cleanup, abatement, and

18   remedial work" under California Water Code section 13304, including actions to

19   require that work to be undertaken; or 3) constitute "corrective action" under Health

20   and Safety Code section 25187, whether or not those actions were taken pursuant to

21   CERCLA.

22   2.25   "Response Costs" shall mean all costs of removal, costs of remedial

23   action, and necessary costs of response (as those terms are used in §107(a) of

24   CERCLA), whether or not those costs were incurred in connection with CERCLA,

25   the HSAA, or other statute and whether or not those costs were incurred voluntarily

26   or otherwise.  Response Costs also include, but are not limited to, the following

27   costs: direct labor costs; contractor, consultant and expert costs; travel and any out of

pocket expenses; the costs of identifying, developing evidence against, and pursuing claims against persons or entities liable for the release or threatened release of hazardous substances in or from the BKK Facility; indirect costs; investigative costs; oversight costs; applicable interest charges; attorneys' fees; and damage caused to any wells and wellhead treatment of any water allegedly affected by the BKK Facility.

2.26   "Second Consent Decree" shall mean the Second Consent Decree entered into between DTSC and certain settling defendants in the case *California Department of Toxic Substances Control, et. al. v. American Honda Motor Co., Inc., et. al.*, No. CV10-03378, (C.D. Cal. May 5, 2010), as amended.

2.27   "Subject Property" shall mean the Class I Landfill, the Leachate Treatment Plant, service roads and related pollution control equipment located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792.

2.28   "Third Consent Decree" shall mean the Third Partial Consent Decree entered into between DTSC and settling defendants in the case *California Department of Toxic Substances Control, et. al. v. American Honda Motor Co., Inc., et. al.*, No. 2:15-cv-00729-R-AJW (C.D. Cal. July 25, 2015), ECF No. 16, as amended.

2.29   "WMB" shall mean Washington Mutual Bank, Henderson, Nevada, and its former subsidiary Washington Mutual Bank, FSB, Park City, Utah.

2.30    "Washington Mutual Bank Receivership" shall mean the receivership established on September 25, 2008, when the Office of Thrift Supervision closed WMB and appointed the FDIC-R as receiver for WMB.

2.31   "WMI" shall mean Washington Mutual, Inc.

2.32    "*Washington Mutual Inc. Bankruptcy*" shall mean *In re Washington Mutual, Inc*., Bankr. Del. No. 08-12229 (MFW), established on September 26, 2008, when WMI filed for bankruptcy protection.

2.33    "WMI Entities" shall mean the WMI Liquidating Trust and its predecessors and successors in interest including, but not limited to the following: WMI, WMI Investment Corp., and H.F. Ahmanson & Company; WMI Rainier, LLC and its predecessors and successors in interest including, but not limited to, Ahmanson Developments, Inc. and Oxford Investment Corporation; and each of their predecessors and successors in interest.

2.34    "WMI Liquidating Trust" means WMI Liquidating Trust, established by the Seventh Amended Plan of Reorganization in the *Washington Mutual Inc. Bankruptcy*, approved by the United States Bankruptcy Court on March 19, 2012.

III.   <u>BACKGROUND</u>

3.1    This Section III presents background information for context only. Nothing in this Section III is an admission by any Party or shall be admissible in any proceeding for the truth of the matter asserted.

3.2    This Consent Decree relates to the BKK Facility, which contains the Class I Landfill, the Class III Landfill, the Leachate Treatment Plant and the related facilities.  The Leachate Treatment Plant and the related collection system collect and treat wastes from both the Class I and Class III Landfills.  BKK Corporation ("BKK Corp.") owns the portion of the BKK Facility that is commonly described as Parcel 3, which includes the Class I and Class III Landfills.  In 2003, BKK Corp. sold the portion of its property commonly described as Parcels 1 and 2 to the City of West Covina.

3.3    In 1959, Home Savings purchased land in and around West Covina, California, including the approximately 583 acres of land on which the BKK Facility is located.  In 1963, Home Savings was granted land use and regulatory authorization to operate sanitary landfills on two areas of its land, denominated as Area B and Area D, and to conduct waste disposal operations there.

3.4    In 1963, Home Savings was granted preliminary regulatory authority to accept "Class I materials" subject to the fulfillment of certain conditions set out in the approval.

3.5    In January 1964, Home Savings leased Areas B and D to BKK Corp., which further developed and operated the landfills.  Disposal of municipal wastes in Area D commenced at or around about this time; disposal of wastes in Area B commenced in or around 1968.  In or about 1969, BKK Corp. obtained further authorization from the regulatory authorities to dispose of hazardous wastes in Area B.  Disposal of hazardous wastes in this area commenced at about that time.

3.6    In or about 1970, the lease between Home Savings and BKK Corp. was amended to, among other things, increase the area of the leasehold and to provide BKK Corp. with an option to purchase the leased area.  In or about 1973, Home Savings transferred ownership of the leased property to a Home Savings subsidiary named Oxford Investment Corporation.  In or about 1977, after BKK Corp. exercised its option to purchase the property, title was transferred to BKK Corp.  BKK Corp. has owned some or all of the BKK Facility since that time.  BKK Corp. also acquired at least one adjacent parcel, commonly known as Parcel 5.

3.7    BKK Corp. operated a landfill in the vicinity of Area D from about 1964 through about 1968 pursuant to the authorizations granted by the City of West Covina and the RWQCB.  BKK Corp. operated what is now known as the Class I Landfill – a hazardous waste landfill in an area of the BKK Facility that included some or all of Area B – from approximately 1968 through about 1987 (although BKK Corp. stopped accepting hazardous waste in approximately 1984), pursuant to authorization provided by the City of West Covina and the RWQCB.  In or about 1986, BKK Corp. prepared a closure plan for the Class I Landfill, received agency approval of that plan, and subsequently implemented the closure plan, which included installation of a clay and vegetative cover, a gas collection system, and

operation of the Leachate Treatment Plant.  On or about March 15, 1989, BKK Corp. certified that it had closed the Class I Landfill in accordance with the closure plan.

3.8     In or about 1987, BKK Corp. commenced operation of a municipal solid waste landfill, the "Class III Landfill," adjoining the western side of the Class I Landfill.  The Class III Landfill stopped accepting waste in November 1996.  The Class III Landfill is under the jurisdiction of the Waste Management Enforcement Agency for the City of West Covina, which CalRecycle has certified as the local enforcement agency for solid waste facilities in West Covina.

3.9     In 1995, Oxford Investment Corporation was renamed Ahmanson Developments Inc. Also in 1995, that company, which previously had been a subsidiary of Home Savings, became a direct subsidiary of H.F. Ahmanson & Company.

3.10    In 1998, Home Savings' parent corporation, H.F. Ahmanson & Company merged into WMI, which was WMB's parent corporation.  As part of that transaction, Home Savings merged into WMB, and Ahmanson Developments Inc., became a direct subsidiary of WMI.

3.11    In or about 2004, NAMCO Securities Corp., at that time a subsidiary of WMB, loaned BKK Corp. money to assist BKK Corp. in paying certain insurance premiums and to maintain the BKK Facility.

3.12    On October 18 and 20, 2004, BKK Corp. notified DTSC that, for financial reasons, BKK Corp. would no longer be able to perform required post-closure care of the Class I Landfill or operate the Leachate Treatment Plant, after November 17, 2004.  As a result, DTSC hired a contractor to conduct emergency response activities at the BKK Facility beginning on November 18, 2004.  These activities were necessary to ensure continuous maintenance and operation of systems that are essential to protect public health, safety, and the environment.  DTSC has incurred and continues to incur Response Costs by, among other things, planning,

conducting, requiring and overseeing Response Actions, including removal actions and remedial actions, at the BKK Facility.  Further, DTSC continues to pursue Response Actions by, among other things, requiring potentially responsible parties to fund and undertake removal and remedial actions at the BKK Facility.

3.13    On or about November 5, 2004, DTSC sent a letter to WMI and other potentially responsible parties ("PRPs") under CERCLA section 107(a), 42 U.S.C. § 9607(a), for Response Costs at the BKK Facility informing them that they were PRPs with regard to the BKK Facility and that DTSC intended to pursue legal remedies against them with regard to the BKK Facility.

3.14    On December 2, 2004, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order, Docket No. I/SE-D-04105-004 ("ISE Order"), to BKK Corp. and approximately fifty (50) other respondents including WMB, who DTSC alleged to have disposed of waste at the Class I Landfill or to be a prior owner or operator of the BKK Facility, and therefore to be PRPs for the BKK Facility.  The ISE Order required the respondents to perform certain Response Actions and to reimburse DTSC for certain Response Costs.  DTSC commenced negotiations with some of the respondents.

3.15    Subsequently, DTSC entered a series of administrative settlement agreements with some of the PRPs named in the ISE Order.  WMB was one of the settling respondents.

3.16    On or about October 31, 2005, DTSC filed a complaint in this Court against approximately twenty-five (25) PRPs for the BKK Facility, each of whom at the time was a member of the BKK Working Group including WMB (the "First Complaint").  *California Department of Toxic Substances Control v. American Honda et al,* No. CV-05-7746 CAS (C.D. Cal. filed October 31, 2005).  The First Complaint asserts claims for recovery of Response Costs pursuant to CERCLA section 107, 42 U.S.C. § 9607, declaratory judgment pursuant to CERCLA, section

113(g)(2), 42 U.S.C. § 9613(g)(2), and injunctive relief pursuant to California Health and Safety Code section 25358.3(e) in connection with alleged releases of hazardous substances into the environment at and from the Subject Property.  Also on October 31, 2005, DTSC lodged a proposed consent decree.  The named defendants had already agreed to the proposed consent decree.

      3.17   On March 9, 2006, the Court entered an Amended First Consent Decree ("Amended First Consent Decree"), which required the settling defendants to that agreement, including WMB, to undertake various actions regarding the Subject Property and to reimburse DTSC for certain costs it had incurred or would incur in the future related to the Subject Property.  The Amended First Consent Decree became effective on March 9, 2006, for a two-year period.  The Amended First Consent Decree identified WMI and NAMCO Securities Corp. as "affiliated entities" of WMB, deemed to be settling defendants for certain provisions of the Amended First Consent Decree.  Subject to the covenants, conditions and reservations of rights therein, the Amended First Consent Decree resolved the claims asserted in the First Complaint.

      3.18   The parties to the Amended First Consent Decree, including WMB, twice extended the Amended First Consent Decree past the initial termination date. The Court entered those extensions on February 22, 2008, and August 28, 2008. Thereafter, parties to the Amended First Consent Decree, not including WMB, executed a third extension of the Amended First Consent Decree further extending the Decree, which the Court approved on March 9, 2009.  The parties to the Amended First Consent Decree, not including WMB, executed six additional extensions of the Amended First Consent Decree, each of which was approved by the Court.  Each of the members of the BKK Working Group who were settling defendants in the Second Consent Decree complied with all the requirements of the Amended First Consent Decree.

3.19    On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed FDIC-R as receiver for WMB.  On September 25, 2008, FDIC-R, FDIC-C, and JPMC entered into the Purchase and Assumption Agreement whereby JPMC purchased assets and assumed liabilities of WMB to the extent provided by that Agreement.

3.20    On September 26, 2008, WMI and WMI Investment Corp. (collectively, the "Debtors"), commenced the Washington Mutual Bankruptcy by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in Delaware.

3.21    DTSC, the BKK Joint Defense Group and certain of its members filed proofs of claim in the WMB Receivership alleging that WMB was liable for Response Costs and other damages associated with the BKK Facility.  12 U.S.C. § 1821(d).  All of the aforementioned proofs of claim have been disallowed.  The BKK Joint Defense Group, and one of its members, Bayer CropScience, Inc. ("Bayer"), filed, but through extensions have not served, a complaint against FDIC-R in the United States District Court for the District of Columbia alleging FDIC, as Receiver of WMB, was liable for Response Costs and other damages associated with the BKK Facility. *BKK Joint Defense Group et al. v. FDIC, in its capacity as Receiver for Washington Mutual Bank*, Case No. 1:09-cv-00948-CKK (D. D.C. filed May 21, 2009).  DTSC and FDIC-R entered into a series of tolling agreements.

3.22    Since early 2009, JPMC has been in negotiations with DTSC to attempt to resolve its alleged liabilities associated with the BKK Facility.

3.23    In March 2009, DTSC, the BKK Joint Defense Group, and certain of its members each filed proofs of claim in the *Washington Mutual Inc. Bankruptcy* alleging that WMI and its subsidiary, WMI Rainier (the successor to Oxford Investment Corporation) were jointly and severally liable for Response Costs and other damages associated with the BKK Facility.

1    3.24    On April 13, 2011, the Bankruptcy Court presiding over the

2    *Washington Mutual Inc. Bankruptcy* approved a settlement agreement between the

3    Debtors, JPMC, DTSC and the BKK Joint Defense Group (the "Bankruptcy

4    Settlement") in which the settling parties agreed, among other things, that JPMC

5    would fund the obligations of the WMI Entities for Response Costs associated with

6    the BKK Facility, as defined therein, and act as their agent for certain insurance

7    policies as provided by that Settlement.   The Bankruptcy Settlement became

8    effective upon final approval of the Bankruptcy Plan by the Bankruptcy Court on

9    February 24, 2012.   Section 1.3 of the Bankruptcy Settlement states that "the

10   automatic stay, if applicable, shall be lifted to the limited extent required to permit a

11   determination of WMI's liability for Response Costs Related to the BKK Facility . . .

12   by the United States District Court for the Central District of California" and that it

13   was "the Parties' intention that the United States District Court for the Central

14   District of California shall be the venue for all matters relating to the enforcement of

15   the [Bankruptcy Settlement]."

16   3.25    On May 10, 2010, DTSC filed a second complaint in this Court against

17   a number of defendants, each of whom at the time was a member of the BKK

18   Working Group, but not including WMB, alleging liability associated with the

19   Subject Property that is part of the BKK Facility (the "Second Complaint").

20   *California Department of Toxic Substances Control v. American Honda et al,*

21   U.S.D.C. C.D. Cal. No. CV-10-03378.   The Second Complaint asserts claims for

22   recovery of Response Costs pursuant to CERCLA section 107, 42 U.S.C. § 9607,

23   declaratory judgment pursuant to CERCLA section 113(g)(2), 42 U.S.C. §

24   9613(g)(2), and injunctive relief pursuant to California Health and Safety Code

25   section 25358.3(e) in connection with alleged releases of Hazardous Substances into

26   the environment at and from the Subject Property.   DTSC lodged a proposed Second

27   Consent Decree the same day.

13

3.26    On August 10, 2010, the Court entered the "Second Consent Decree," which required the settling defendants therein to continue various actions regarding the Subject Property, to reimburse DTSC for certain costs it had incurred and could in the future incur related to the Subject Property, and to conduct an engineering evaluation/cost analysis (EE/CA) for the Subject Property.  The Second Consent Decree became effective on August 10, 2010, for a three-year period.  The parties to the Second Consent Decree agreed to extend the Second Consent Decree until February 10, 2016.  The Court approved that extension on July 30, 2013.

3.27    On February 2, 2015, DTSC filed a third complaint in this Court against a number of defendants, each of whom at the time was a member of the BKK Working Group, alleging liability associated with the Subject Property that is part of the BKK Facility (the "Third Complaint").  *California Department of Toxic Substances Control v. American Honda et al,* No. 2:15-cv-00729-R-AJW (C.D. Cal. February 2, 2015).  The allegations of the Third Complaint are essentially identical to those of the Second Complaint.  Concurrent with filing the Third Complaint, DTSC lodged a proposed Third Consent Decree the same day.

3.28    On May 27, 2015, the Court entered the "Third Consent Decree," which required the settling defendants therein to continue various actions regarding the Subject Property, to reimburse DTSC for certain costs it had incurred and could in the future incur related to the Subject Property, and to conduct a groundwater Remedial Investigation and Feasibility Study (RI/FS) for the Subject Property.  The Third Consent Decree became effective on May 27, 2015.

3.29    Concurrent with the lodging of this Consent Decree, DTSC will file a stipulation and proposed order that would allow DTSC to file an amended complaint (the "Amended First Complaint"), that adds JPMC, WMI Liquidating Trust, and WMI Rainier, LLC to the First Complaint and substitutes in FDIC-R for WMB.

The Amended First Complaint includes no new allegations against any other parties and does not require any answer or other responsive pleading from any other party.

     3.30    Concurrently with the lodging of this Consent Decree, DTSC will lodge the Disbursement Amendment to the Third Consent Decree.  That Amendment is an agreement between DTSC and the BKK Working Group that provides – as specified therein – that the settlement proceeds provided for in Paragraphs 7.1 and 7.2 below shall be used for future response costs at the BKK Facility.

## IV.   <u>CONSENT DECREE</u>

     4.1    The Parties have now reached the settlement embodied in this Consent Decree, pursuant to which JPMC will pay the sum of eighty-six million dollars ($86 million) to resolve the Home Savings Parties' alleged liability for Response Costs, Response Actions, and other damages associated with the BKK Facility as set forth in this Consent Decree, which liability is deemed to include, but not be limited to, any liability based on any actions of Home Savings, Oxford Investment Corporation, or any of the Home Savings Parties, or any action taken on their behalf by any of their officers, directors or employees.

     4.2    As provided herein, this Consent Decree is intended to (a) resolve all claims that DTSC and the Agreeing Agencies have against the Home Savings Parties for the Matters Addressed in this Consent Decree, as set forth in Section VI of this Consent Decree; (b) resolve all claims asserted in the First Complaint and the Amended First Complaint against the Home Savings Parties; (c) require JPMC on behalf of the Home Savings Parties to provide funds for past, and future Response Actions in a fair and reasonable amount; (d) provide the Home Savings Parties with contribution protection and other relief, as set forth herein or as otherwise provided by law, associated with the BKK Facility; and (e) provide the Agreeing Agencies with covenants not to sue from the Home Savings Parties.

4.3     DTSC and the Home Savings Parties agree, and this Court, by entering this Consent Decree finds, that (a) this Consent Decree has been negotiated by the Parties in good faith; (b) settlement of this matter by the Parties and entry of this Consent Decree is intended to avoid prolonged and complicated litigation between the Parties and is the most appropriate means to continue to address conditions at the BKK Facility; (c) the liabilities resolved in this Consent Decree include the liabilities that were filed as proofs of claim in the WMB Receivership and the *Washington Mutual Inc. Bankruptcy*; and (d) as provided in Sections VII and XIII of this Consent Decree and the Disbursement Amendment to the Third Consent Decree the Disbursement Amount will fund future Response Actions at the BKK Facility; and (e) this settlement is fair, reasonable, faithful to the objectives of CERCLA and the Hazardous Substances Account Act, California Health and Safety Code section 25300 *et seq.* (the "HSAA"), and in the public interest.

NOW, THEREFORE, with the consent of DTSC and the Home Savings Parties, as defined herein, the terms of this Consent Decree are hereby ORDERED, ADJUDGED AND DECREED:

V.     JURISDICTION

This Consent Decree is entered into by DTSC and the Home Savings Parties pursuant to DTSC's authority under section 107 of CERCLA, 42 U.S.C. § 9607, §7002 of the Solid Waste Disposal Act (also known as the Resource Conservation Recovery Act ("RCRA")), 42 U.S.C. § 6972, California Health and Safety Code sections 25187, 25358.3(e), and such other authority as DTSC may have to enter into such agreements.  The Court has jurisdiction over the subject matter of this Consent Decree pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 6972, 9607, and 9613, and 12 U.S.C. § 1821(d), and supplemental jurisdiction over claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a).  DTSC, the Home Savings Parties, and the Agreeing Agencies agree that the Court has

jurisdiction to approve, enter, and enforce this Consent Decree and the Order, and agree that venue in this District is proper.

## VI.   MATTERS ADDRESSED

The "Matters Addressed in this Consent Decree" are the matters addressed in this Consent Decree including, but not limited to, all removal and remedial actions, or other Response Actions, taken or to be taken, and all Response Costs incurred or to be incurred by DTSC or any other agency of the State of California or any other person as a result of the release or threatened release of Hazardous Substances at or from the BKK Facility and damage caused to any wells and wellhead treatment of water allegedly affected by the BKK Facility and any Natural Resource Damages incurred as a result of the release or threatened release of Hazardous Substances at or from the BKK Facility.  The parties intend for the term "Matters Addressed in this Consent Decree" to be construed broadly.

## VII.   PAYMENTS

7.1      Within five (5) days of the Effective Date of this Consent Decree, JPMC shall notify DTSC and the BKK Working Group of the amount of interest that eighty-five (85) million dollars would earn in the period from the day this Consent Decree is fully executed by the Parties (the "Execution Date") to the Effective Date at an interest rate that shall be the average of the rate of the California Surplus Money Investment Rate and the one year treasury constant maturity rate in effect on the date this Consent Decree is entered (the "Interest Rate").  That amount shall be known as the "Interest Amount." The sum of the Interest Amount and the $85 million shall be known as the "Disbursement Amount."

7.2      Within thirty (30) days after the later of the Effective Date or JPMC receiving notice from the BKK Working Group of the Electronic Funds Transfer ("EFT") procedure, and consistent with the Disbursement Amendment to the Third Consent Decree, JPMC shall transfer the Disbursement Amount as follows.

7.2.1 JPMC shall pay $27,000,000 plus the interest accrued on $27,000,000 as specified in Paragraph 7.1 to DTSC.  Payment shall be made in accordance with current EFT procedures to be provided to JPMC by DTSC, and shall be accompanied by a statement identifying the name and address of the party(ies) making payment, the Site name, Site Code Number 300012, and the docket number of this action.  Confirmation shall be sent concurrently to DTSC, the BKK Working Group, and the FDIC-R as provided in paragraph 11.7.

7.2.2 JPMC shall pay $58,000,000 plus the interest accrued on $58,000,000 as specified in Paragraph 7.1 to the 2016 PRP Settlement Escrow Account.  Payment shall be made in accordance with current EFT procedures to be provided to JPMC by the BKK Working Group within five (5) days of the Effective Date, and shall be accompanied by a statement identifying the name and address of the party(ies) making payment, Confirmation shall be sent concurrently to DTSC, the BKK Working Group, and the FDIC-R  as provided in Paragraph 11.7

7.3   The Parties believe and the Court, by approving this Consent Decree, finds, that the amount paid pursuant to this Consent Decree is fair and reasonable, and reflects an equitable allocation to the Home Savings Parties of their liabilities associated with Matters Addressed in this Consent Decree, under all the circumstances present.  All payments made pursuant to this Consent Decree have been made to pay or reimburse recoverable Response Costs and Natural Resource Damages as defined herein, incurred or to be incurred at the BKK Facility with respect to releases or threatened releases of Hazardous Substances at or from the BKK Facility.  All future Response Costs funded with or reimbursed from the

proceeds of this Consent Decree, if incurred by DTSC, shall be incurred in a manner not inconsistent with the NCP, or, if incurred by private parties, shall be incurred in a manner consistent with the NCP.

7.4     At the time specified in Paragraph 7.2 above, JPMC shall, in addition to the Disbursement Amount, pay to DTSC the sum of $1 million to reimburse DTSC for attorney fees and other costs DTSC incurred related to this Consent Decree.  Payment shall be made to DTSC by EFT in accordance with current EFT procedures to be provided to JPMC by DTSC, and shall be accompanied by a statement identifying the name and address of the party(ies) making payment, the Site name, Site Code Number 300012, and the docket number of this action.

VIII.   COVENANTS NOT TO SUE BY AGREEING AGENCIES AND RESERVATIONS OF RIGHTS

8.1     In consideration of the payments that have been and will be made under the terms of this Consent Decree, DTSC and the Agreeing Agencies hereby covenant not to sue or take any judicial or administrative action against the Home Savings Parties and not to assert against the Home Savings Parties any claims or causes of action relating to the BKK Facility for (a) Response Costs; (b) corrective action under Health and Safety Code section 25187 or the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901; (c) Response Actions or other claims for injunctive relief; (d) Natural Resource Damages; (e) any obligations they may still have under the ISE Order, the First Complaint, or the Amended First Consent Decree; or (f) any other matter related to releases of Hazardous Substances at the BKK Facility, including, but not limited to, any claims arising under CERCLA, 42 U.S.C. §§ 9601 *et seq.*; the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*; the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.*; Chapter 6.5 of Division 20 (commencing with section 25100) of the California Health & Safety Code (the "Hazardous Waste Control Act"); Chapter 6.6 of the California Health & Safety Code (The "Safe Drinking Water and Toxic Enforcement

Act of 1986"); the HSAA; the Porter-Cologne Water Quality Control Act, §§ 13000 *et seq.* of the California Water Code; Civil Code §§ 3479-3486, 3490-3496 and 3501-3505; (g) any relief under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1821 *et seq.* including but not limited to claims that were, could have been or could be asserted in the WMB Receivership; or (h) any other applicable laws or regulations, statutory or common law, including those provisions granting rights to the public including any exercise of civil, judicial or administrative authority pursuant thereto, which arise from or are related to any Hazardous Substances that originated or came to be located at the BKK Facility or were or are in the future disposed of at any offsite facility, and including any claims related to the disposal, movement, migration, or decomposition of such Hazardous Substances.  DTSC and the Agreeing Agencies also agree not to issue any future administrative orders to, or seek any injunctive relief from, the Home Savings Parties regarding any of the Matters Addressed in this Consent Decree.

8.2     In any future settlements, agreements or orders, including, but not limited to consent decrees, administrative settlements, administrative orders or judicial orders, that DTSC enters with or issues to any other PRP relating to the BKK Facility, DTSC will notify the future settling parties of this Consent Decree and of the bars on contribution and other claims implemented pursuant to the Order.

8.3     DTSC hereby states its intention that as long as DTSC is the lead agency for the Subject Property, any costs of removal, costs of remedial action, and necessary costs of response (as those terms are used in Section 107(a) of CERCLA) incurred by any party (other than an Agreeing Agency) for any work performed at the Subject Property shall be performed pursuant to an administrative order, a civil injunction, or an administrative or judicially approved settlement that resolves or partially resolves that person's liability to DTSC.  This paragraph shall not apply in

the event of any occurrence, event, or condition that arises at the BKK Facility that results in an emergency (including, but not limited to, fire, earthquake, explosion, landslide, or imminent or immediate human exposure to a Hazardous Substance caused by the release or threatened release of a Hazardous Substance), and that constitutes a material change in conditions at the BKK Facility.

8.4     Except as explicitly provided in this Consent Decree, nothing herein shall limit the power and authority of any Agreeing Agency or any other government agency to take, direct, or order all actions necessary to protect public health, welfare, or the environment or to prevent, abate, or minimize an actual or threatened release of Hazardous Substances, pollutants or contaminants, or hazardous or solid waste on, at, or from the BKK Facility including the right to issue any administrative order against any Home Savings Party with respect to the BKK Facility not otherwise inconsistent with the terms of this Consent Decree.  Except as explicitly provided otherwise, nothing in this Consent Decree waives the obligation of any party to comply with any statute, regulation or other law with respect to the BKK Facility or to obtain any permit or authorization required by any law.  Further, except as specifically provided for in this Consent Decree, nothing herein shall prevent any Agreeing Agency from seeking legal or equitable relief consistent with this paragraph.

8.5     Nothing in this Consent Decree shall preclude any Agreeing Agency from seeking the recovery of any Response Costs or Natural Resource Damages from any entity not a Home Savings Party under this Consent Decree.

8.6     The Covenant Not to Sue set forth in Paragraph 8.1 above shall take effect upon the Effective Date of this Consent Decree.  The Covenant Not to Sue is conditioned upon the full payment of the amounts specified in Section VII of this Consent Decree.  This Covenant Not to Sue extends only to the Home Savings Parties and does not extend to any other person or entity.

8.7     The Covenant Not to Sue set forth in Paragraph 8.1 above does not pertain to any matters other than those expressly specified therein.  The Agreeing Agencies reserve, and this Consent Decree is without prejudice to, all rights against Home Savings Parties with respect to all other matters, including but not limited to the following.

(a)     Claims based on a failure by JPMC to make the payments or by the Home Savings Parties to perform any obligation provided for in this Consent Decree.

(b)     Except as may otherwise be provided for herein, any liability arising from past, present or future ownership, operation, disposal, release, or threat of release of Hazardous Substances, pollutants or contaminants, at other sites besides the BKK Facility.

(c)     Criminal Liability.

(d)     Liability based on the ownership or operation of the BKK Facility by the Home Savings Parties when such ownership or operation commences after signature of this Consent Decree by the Home Savings parties, however, the amount recoverable by the Agreeing Agencies pursuant to this reservation shall be limited to the equitable share of the judgment amount for the alleged activity.

(e)     Liability based on the Home Savings Parties' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the BKK Facility, after signature of this Consent Decree by the Home Savings Parties, however, the amount recoverable by the Agreeing Agencies pursuant to this reservation shall be limited to the equitable share of the judgment amount for the alleged activity.

(f)     The liability of any successor to JPMC to the extent that liability derives from the non-JPMC merger partner.

(g)      Any matter not related to the BKK Facility.

8.8      Nothing herein shall prevent any Agreeing Agency from seeking relief to enforce the terms of this Consent Decree.

8.9      The provisions of this Section VIII do not authorize any actions against FDIC-R otherwise precluded by federal law.

IX.   <u>COVENANTS NOT TO SUE BY HOME SAVINGS PARTIES AND RESERVATIONS OF RIGHTS</u>

9.1      In consideration of DTSC's Covenant Not to Sue in Section VIII of this Consent Decree, the Home Savings Parties hereby covenant not to sue and not to assert any claims or causes of action against DTSC and any other Agreeing Agency or its authorized officers or employees, based on any action relating to the BKK Facility including any actions of the type specified in Paragraph 8.1 herein.

9.2      The Covenant Not to Sue set forth in Paragraph 9.1 above does not pertain to any matters other than those expressly specified therein.

9.3      The Home Savings Parties agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that the Home Savings Parties may have for response costs relating to the BKK Facility against any other person who is a potentially responsible party under CERCLA at the BKK Facility.  This waiver shall not apply with respect to any defense, claim, or cause of action that the Home Savings Parties may have against any person if such person asserts a claim or cause of action relating to the BKK Facility against such Home Savings Parties.

9.4      Nothing contained in the Covenant Not to Sue set forth in Paragraph 9.1 shall bar a Home Savings Party from asserting claims for contribution or cost recovery against DTSC or any other agency of the State of California in the event that, in an action brought by a third party, a judgment is entered against a Home Savings Party for Response Costs, corrective action or injunctive relief related to the BKK Facility for any Matters Addressed in this Consent Decree; however any such

claim against any agency of the State of California shall be limited to liability the agency is alleged to have as an arranger under CERCLA section 107(a)(3) and the amount recoverable from that claim shall be limited to the state agencies' equitable share of the judgment amount.  Nothing in this Consent Decree shall bar a Home Savings Party from suing to enforce the terms of this Consent Decree including, but not limited to, the bars on contribution and other claims.

X.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

10.1    DTSC and the Home Savings Parties agree, and by entering this Consent Decree the Court finds, that this settlement constitutes a judicially approved settlement for purposes of section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that, upon entry of this Consent Decree, the Home Savings Parties are entitled to protection from contribution pursuant to CERCLA section 113(f)(2), 42 U.S.C. § 9613(f)(2) and as may be otherwise provided by law – regardless of whether those claims, if in the nature of contribution, are brought under section 107 of CERCLA, 42 U.S.C. § 9607, section 113 of CERCLA, 42 U.S.C. § 9613, or other provisions of statutory or common law – for Matters Addressed in this Consent Decree.

10.2    DTSC and the Home Savings Parties further agree, and by entering this Consent Decree, the Court finds, that upon entry of this Consent Decree, the settlement set forth in this Consent Decree constitutes a good faith settlement under federal law and under sections 877 and 877.6 of the California Code of Civil Procedure.  Therefore, upon entry, this Consent Decree shall bar any further claims against the Home Savings Parties by any joint tortfeasor or co-obligor, including claims by any other potentially responsible parties at the BKK Facility, for equitable comparative contribution, or partial or comparative indemnity – including artfully pleaded or disguised claims that amount to claims for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault, regardless of whether those claims are brought under section

107 of CERCLA, 42 U.S.C. § 9607, section 113 of CERCLA, 42 U.S.C. § 9613, or other provisions of statutory or common law – regarding Matters Addressed in this Consent Decree.  Nothing in Paragraphs 10.1 or 10.2 is intended to limit any other bars on claims against the Home Savings Parties to which they may otherwise be entitled by law.

10.3    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree or specifically identified as a third party beneficiary of this Consent Decree, except that this settlement "reduces the potential liability of the other [potentially liable persons] by the amount of the settlement" paid by JPMC, in accordance with Section 113(f)(2) of CERCLA.   Except as explicitly stated in this Consent Decree, the Agreeing Agencies and the Home Savings Parties expressly reserve, and this Consent Decree is without prejudice to, all rights (including, but not limited to, any right to contribution, indemnification and/or reimbursement), defenses, claims, remedies, demands, and causes of action that any of Agreeing Agencies or Home Savings Parties may have with respect to any matter, transaction, or occurrence relating in any way to the BKK Facility against any person not an Agreeing Agency or a Home Savings Party.

10.4    The Home Savings Parties agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify DTSC before filing any such suit or claim.

10.5    The Home Savings Parties also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, they will notify in writing DTSC within ten (10) days of service of the complaint on them.  In addition, any Home Savings Party shall notify DTSC within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.  DTSC

agrees to cooperate with any Home Savings Party in opposing any suit or claim that the Home Savings Parties and DTSC believe should be barred by this Consent Decree or the Order by providing appropriate declarations or other documentation regarding the intent of this Consent Decree or the Order.  The foregoing action shall not require DTSC, its staff or counsel to take any action not authorized by law or not consistent with applicable ethical requirements.

XI.   <u>OTHER PROVISIONS</u>

11.1    Nothing in this Consent Decree, nor any action taken in accordance with its provisions, constitutes an admission by any Home Savings Party of any allegations, findings, determinations or conclusions contained in the ISE Order, the First Complaint, the Amended First Consent Decree, the Amended First Complaint, or this Consent Decree, including without limitation that it sent, transported or arranged for disposal of any Hazardous Substances to or at the Class I Landfill or the Class III Landfill, that it owned or operated the BKK Facility or that it is liable with respect to the BKK Facility.  Nothing in this Consent Decree shall be construed as an admission by any Home Savings Party or Agreeing Agency of any issue of law or fact.  Prior to the Effective Date, evidence of the terms of this Agreement shall be inadmissible against a Party to this Consent Decree in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties.

11.2    Nothing in this Consent Decree constitutes any admission by the BKK Working Group regarding any allegations, findings, determinations or conclusions contained in the ISE Order, the First, Second and Third Complaints, the Amended First Consent Decree, the Second Consent Decree, the Third Consent Decree, the Disbursement Amendment to the Third Consent Decree, or this Consent Decree, including without limitation that it sent, transported or arranged for disposal of any hazardous substances to or at the Class I Landfill, or that it owned or operated the BKK Facility that includes the Class I Landfill, and does not admit any liability with

respect to the BKK Facility.  Nothing in this Consent Decree shall be construed as an admission by any member of the BKK Working Group of any issue of law or fact.

11.3    Except as specifically provided for herein, nothing in this Consent Decree shall prejudice, waive, or impair any right, remedy, or defense that any Home Savings Party may have against any entity.  Each Home Savings Party agrees to comply with and be bound by the terms of this Consent Decree and further agrees not to contest the basis or validity of this Consent Decree in any action to enforce it.

11.4    This Consent Decree may only be modified in writing by mutual agreement by the signatories hereto and with approval of the Court.

11.5    Except as provided in Paragraph 7.4 of this Consent Decree, DTSC and the Home Savings Parties acknowledge and agree that as to each other they are to bear their own costs, expenses, expert and consultant fees, and attorneys' fees arising out of the matters addressed herein, the negotiation, drafting and execution of this Agreement, and all matters arising out of or connected therewith.

11.6    This Agreement shall be binding upon and shall inure to the benefit of the Agreeing Agencies and the Home Savings Parties, including their predecessors, successors, heirs and assigns.  Contingent on their compliance with the terms of this Consent Decree, the following persons and entities shall also be deemed Home Savings Parties entitled to the protections of Sections VIII and X: NAMCO Securities Corp.;  AOC LLC; HS Loan LLC; H.S. Loan Corporation; WAMU 1031 Exchange; WM Mortgage Reinsurance Company, Inc.; WMI Citation Holdings LLC; WMI Holdings Corp.; any successor to Home Savings or Oxford Investment Corporation; any parent, subsidiary or affiliate (as defined in 11 U.S.C. § 101(2)) of the Home Savings Parties; any employee or officer of any of the Home Savings Parties in his or her capacity as such; any individual or entity who is an insured under any of the BKK-Related Policies, as that term is defined in the Bankruptcy Settlement; any of the successors, heirs and assigns of the foregoing; and  the BKK-

Related Carriers, as that term is defined in the Bankruptcy Settlement.  If any person or entity included in the prior sentence takes any action inconsistent with the requirements of this Consent Decree, that entity or person will no longer be deemed a Home Savings Party and will not be entitled to any of the protections of this Consent Decree.  Subject to the prior sentence, all persons and entities who are deemed to be Home Savings Parties, but are not Parties to this Consent Decree, are third-party beneficiaries of this Consent Decree and have the right to enforce the terms of this Consent Decree as if they were parties to this Consent Decree.  Except as explicitly provided in this Consent Decree, no other parties are third-party beneficiaries of this Consent Decree.  Nothing in this Paragraph 11.6 or this Consent Decree shall relieve any BKK-Related Carrier for any obligation of any kind related to any policy not a BKK-Related Policy.

11.7    Any Party wishing to give any notice required by or relating to this Consent Decree to any other Party shall give that notice in writing and send it to each notice as follows:

As to DTSC:

    Amilia Glikman
    Assistant Chief Counsel
    Department of Toxic Substances Control
    1001 I Street
    Sacramento, CA 95814-2828

    James Potter
    Deputy Attorney General
    California Department of Justice
    300 South Spring Street
    Los Angeles, CA 90013

As to JPMC

    William Viets
    Managing Director
    JPMorgan Chase Bank, N.A.
    237 Park Avenue, 12th Floor
    New York, NY 10017

1

Charles J. Janoff
JPMorgan Chase Bank, N.A.
Vice President and Assistant General Counsel
JPMorgan Chase Bank, N.A.
237 Park Avenue - 12th Floor
New York, NY 10017

Albert M. Cohen
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067

As to FDIC-R

Wendy Kloner
Counsel
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room D-7118
Arlington, VA 22226

Andrew Cooper
Hunsucker Goodstein PC
5335 Wisconsin Avenue, NW, Suite 360
Washington, DC 20015

As to the BKK Working Group.

Jim Dragna
Morgan Lewis & Bockius LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106

Any Party that wishes to change the manner in which it receives notice shall give notice to all of the other parties.  Where this Consent Decree requires notice be given to the Home Savings Parties, it shall be sufficient to give notice to JPMC and FDIC-R.

29

## XII.   RETENTION OF RECORDS

12.1     The WMI Entities have provided a declaration confirming that (i) in or in connection with the *Washington Mutual Inc. Bankruptcy* proceedings the WMI Entities made available to DTSC and JPMC all non-privileged documents of which they were aware that related in any manner to Response Actions taken at the BKK Facility or the liability of any person under CERCLA with respect to the BKK Facility (the "WMI Retained Documents,") and (ii) they do not have any objection to these documents being used by DTSC, JPMC, FDIC-R or the public despite the confidentiality agreement entered into with respect to these documents in the *Washington Mutual Inc. Bankruptcy* Proceedings.  Within thirty (30) days of entry of this Consent Decree, JPMC shall turn over to DTSC all non-privileged WMI Retained Documents.  FDIC-R shall be entitled to complete access to all non-privileged WMI Retained Documents within thirty (30) days of FDIC-R's written request to JPMC or DTSC.

12.2     Until ten (10) years after the Effective Date, JPMC shall preserve and retain all records now in its possession or control, or which come into its possession or control, that JPMC has identified or identifies as relating to Response Actions taken at the BKK Facility or the liability of any person under CERCLA with respect to the BKK Facility (the "JPMC Retention Documents"), regardless of any corporate retention policy to the contrary.  Alternative to retaining any record for the period specified in this paragraph, JPMC may turn over that record to DTSC.

12.3     After the conclusion of the document retention period in the preceding paragraph, if JPMC has not turned over all of the JPMC Retention Documents, then JPMC shall notify DTSC at least ninety (90) days prior to the destruction of any such records, and, upon request by DTSC, JPMC shall deliver any such non-privileged records to DTSC.  JPMC may assert that records are privileged under the attorney-client privilege or any other privilege recognized by federal law in which case it shall provide a privilege log in a form mutually agreeable to JPMC and DTSC.

12.4    JPMC hereby certifies that, to the best of its actual knowledge and belief, after reasonable inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the BKK Facility since entering the Purchase and Assumption Agreement.

XIII.  NEGOTIATED ASSUMPTION OF RESPONSIBILITY BY UNITED STATES ENVIRONMENTAL PROTECTION AGENCY ("U.S. EPA")

13.1    In the event that the Director of DTSC and the Regional Administrator of U.S. EPA, Region IX agree, by exchange of letters or other written agreement, that U.S. EPA shall assume primary responsibility for overseeing all future response actions at the BKK Facility ("DTSC/EPA Agreement"), DTSC shall transfer to U.S. EPA whatever portion of the DTSC Work Allotment (as defined in the Disbursement Amendment to the Third Consent Decree) has not been expended by the date of the agreement.  Further, if both there is a DTSC/U.S. EPA Agreement and the Disbursement Amendment to the Third Consent Decree is terminated in accordance with Paragraph 3.9 therein, then DTSC shall also transfer to U.S. EPA whatever portion of the PRP Work Allotment (as defined in the Disbursement Amendment to the Third Consent Decree) is transferred to DTSC in accordance with Paragraph 3.9 of the Disbursement Amendment to the Third Consent Decree that DTSC has not expended.  U.S. EPA shall deposit any money it receives pursuant to this Paragraph 13.1 in the BKK Sanitary Landfill Site Special Account established pursuant to 42 U.S.C. § 122(b)(3) to be retained and used to conduct or finance response actions at or in connection with the BKK Facility, or if those funds are not needed at the BKK Facility, to be transferred by U.S. EPA to the U.S. EPA Hazardous Substance Superfund.  Any funds transferred from DTSC to U.S. EPA pursuant to the DTSC Consent Decree will not be used to reimburse U.S. EPA for response costs it has incurred at or in connection with the BKK Facility prior to the date of the DTSC/EPA Agreement.  U.S. EPA may make available funds in the BKK Sanitary

31

Landfill Site Special Account for disbursement to potentially responsible parties who agree to conduct response actions at the BKK Facility pursuant to an agreement with the United States, as partial reimbursement for performance of those response actions.

13.2    With respect to this Section XIII only, U.S. EPA shall be a third party beneficiary of this Consent Decree.

XIV. <u>PUBLIC COMMENT</u>

This Consent Decree shall be subject to a public comment period for not less than thirty (30) days after lodging with the Court.  Notice of this Consent Decree shall be published in the California Regulatory Notice Register, the Los Angeles Times, and the San Gabriel Valley Tribune.  DTSC may modify or withdraw its consent to this Consent Decree if comments received disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper or inadequate.

XV. <u>MEET AND CONFER</u>

This Consent Decree is contingent and dependent on all of its terms being approved and entered by the Court.  If the Court does not fully approve this Consent Decree as set forth herein, then the Parties shall meet and confer during the thirty (30) day period following the Court's ruling to attempt to work out any issues that arise as a result of the Court's ruling.  If they cannot do so, then this Consent Decree shall be null and void.  If the Court approves this Consent Decree and a notice of appeal is thereafter filed, then at any time before the Effective Date any Party may provide the other Parties with notice of its intent to withdraw from this Consent Decree. The Parties will then have thirty (30) days to attempt to reach an agreement, which will permit this Consent Decree to go forward.  If they do not reach such an agreement, the Parties will make a joint request to the Court to vacate its approval of this Consent Decree, which shall thereafter be null and void.

XVI. <u>DISPUTE RESOLUTION</u>

Any dispute that arises between the Parties with respect to any provision or obligation under this Consent Decree shall, in the first instance, be the subject of good faith negotiations among the Parties.  The Parties agree that they shall use their best efforts to resolve any dispute informally.  In the absence of agreement, any Party may submit the matter to the Court for resolution.  The Court shall retain jurisdiction over this matter and the Parties for the purpose of interpreting and enforcing the terms of this Consent Decree, including the resolution of any such dispute.

XVII. <u>SIGNATORIES</u>

17.1    Each undersigned representative of a Party to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind that Party, including its successors, heirs and assigns, to this Consent Decree.

17.2    Each Home Savings Party hereby agrees that it will not oppose entry of this Consent Decree by this Court and not challenge any provision of this Consent Decree unless DTSC has notified the Home Savings Parties in writing that it no longer supports entry of this Consent Decree as a result of comments received during the Public Comment period as set forth in in Paragraph XIV.   Except as explicitly provided in Section XV (Meet and Confer), by executing this Consent Decree JPMC agrees not to withdraw its agreement to this Consent Decree.

17.3    This Consent Decree may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

17.4    This Consent Decree shall constitute a final judgment pursuant to F.R.C.P. Rule 54(b).  However, this Court shall retain jurisdiction over this Consent

///

///

June 8, 2016

Case No.  CV-05-7746 CA
Consent Decree
with JPMorgan Chase NA et. al

1 | Decree to interpret and enforce the terms of this Consent Decree and to take such
2 | actions as may be necessary to enforce this Court's Order.
3 |      SO ORDERED, APPROVED, SIGNED, ADJUDGED AND ENTERED
4 | THIS 25th of  January, 2017.

6 |     THE HONORABLE _____
7 |     UNITED STATE DISTRICT JUDGE

34

Case No.  CV-05-7746 CA
Consent Decree
with JPMorgan Chase NA et. al

EXHIBITS

Exhibit A – Bankruptcy Settlement


APPROVED AS TO FORM AND CONTENT




KAMALA D. HARRIS
Attorney General of California




Dated: _____           _____
                              JAMES POTTER
                              Deputy Attorney General
                              Attorney for Plaintiffs

                              Loeb & Loeb, LLP



Dated: _____         _____
                              ALBERT COHEN
                              Attorney for JPMC and


                              Hunsucker Goodstein PC




Dated: _____         _____
                              ANDREW COOPER
                              Attorney for FDIC-R

June 8, 2016

35

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL AND
CALIFORNIA TOXIC SUBSTANCES CONTROL ACCOUNT

DATE: _____        By: _____
                                          SIGNATURE


                                          _____
                                          NAME (printed or typed)


                                          _____
                                          TITLE (printed or typed)

CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY


DATE: _____          By: _____
                                            SIGNATURE


                                            _____
                                            NAME (printed or typed)


                                            _____
                                            TITLE (printed or typed)

1    CALIFORNIA STATE WATER RESOURCES CONTROL BOARD

2

3

4    DATE: _____        By: _____

5                                          SIGNATURE

6                                        _____

7                                          NAME (printed or typed)

8

9                                        _____
                                           TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, LOS ANGELES REGION

DATE: _____          By: _____

                                                          SIGNATURE

                                                          _____

                                                          NAME (printed or typed)

                                                          _____

                                                          TITLE (printed or typed)

June 8, 2016

CALIFORNIA DEPARTMENT OF RESOURCES RECYCLING AND
RECOVERY

DATE: _____          By: _____
                                          SIGNATURE


                                          _____
                                          NAME (printed or typed)


                                          _____
                                          TITLE (printed or typed)

1   CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE

2

3

4   DATE: _____      By: _____

                                                                           SIGNATURE

5

6                                                    _____

7                                                    NAME (printed or typed)

8

9                                                    _____

                                                   TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CALIFORNIA AIR RESOURCES BOARD


DATE: _____        By: _____
                                          SIGNATURE


                                          _____
                                          NAME (printed or typed)


                                          _____
                                          TITLE (printed or typed)

1
2
JPMORGAN CHASE BANK, N.A., in its individual capacity and as exclusive agent of (i) WMI Liquidating Trust (solely in its capacity as successor-in-interest to Washington Mutual, Inc.) and (ii) WMI Rainier LLC.

3

4

5
DATE: _____          By: _____

6
                                         SIGNATURE

7
                                         _____

8
                                         NAME (printed or typed)

9

10
                                         _____

                                         TITLE (printed or typed)

11

12

13

14

15
Agent Authorized to Accept Service on Behalf of Above-signed Party:

16
Name: _____

17
Title: _____

18
Company: _____

19
Address: _____

20

21
                _____

22
Phone: _____

23
email: _____

24

25

26

27

June 8, 2016                                                                Case No.  CV-05-7746 CA
                                                                            Consent Decree
                                                                            with JPMorgan Chase NA et. al

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Mutual Bank


DATE: _____        By: _____
                                          SIGNATURE

                                          _____
                                          Keith E. Carson
                                          Receiver-in-Charge
                                          Division of Resolutions and
                                          Receiverships
                                          Federal Deposit Insurance Corporation


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:       Robert E. Feldman

Title:      Executive Secretary

Company:    Federal Deposit Insurance Corporation

Address:    550 17th Street., N.W.

            Room F-1058

Phone:      (202) 898-3811

email:      RFeldman@fdic.gov